**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL J. WILLIS,** | : | **Civil No. 1:12-CV-2503** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of** | : | |
| **Social Security,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

This is an action brought under 42 U.S.C. § 405(g) to review the decision of

the Commissioner of Social Security to deny the plaintiff's claim for disability

insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§

401-433.   The plaintiff, Michael J. Willis, protectively filed an application for

benefits on May 14, 2010, alleging disability since May 7, 2010, due to lower back

and middle back pain, neck pain, rib pain, and arm and leg weakness and numbness.

(Tr. 85, 175, 179.)  The agency denied the claims administratively on September 23,

2010.   (Tr. 112.)   Thereafter, plaintiff's counsel requested and received an

administrative hearing on his claims.  (Tr. 60-84.)  Following this hearing, at which

the plaintiff and a vocational expert appeared and testified, an administrative law

judge (ALJ) found the plaintiff was capable of unskilled, sedentary work such as information clerk, interview clerk, or protective service worker.   (Tr. 41.) Accordingly, the administrative law judge found that the plaintiff retained the residual functional capacity to engage in substantial employment, and denied his claim for DIB.[1]

The plaintiff sought review by the Appeals Council, which found no reason to review the administrative law judge's decision and denied the plaintiff's request for review.  (Tr. 1-5.)  The administrative judge's decision is, therefore, the final decision of the Commissioner.  The plaintiff filed this civil action seeking review of that decision, arguing that the ALJ erred in his assessment of the plaintiff's residual functional capacity by placing excessive emphasis on some evidence in the record while minimizing the opinions of the plaintiff's treating physicians.  Additionally, the

---

[1] Notably, this decision followed a prior unsuccessful application for DIB, in which the plaintiff alleged disability on essentially the same grounds beginning May 24, 2007.  That claim was denied initially on December 3, 2008, and a hearing was thereafter held at which the plaintiff appeared and testified.  The administrative law judge presiding over that claim issued a decision on April 15, 2010, denying benefits.  The plaintiff sought review of the Appeals Council, but the Council found no basis upon which to review or reopen the administrative law judge's decision.  With respect to the claims at issue in this action, the administrative law judge observed that the doctrine of *res judicata* "may likely apply to exclude" the period covered by the earlier claim, but the administrative law judge nevertheless reviewed the totality of the evidence that the plaintiff submitted in support of his claim "as if submitted for the first time in conjunction with the present action."  (Tr. 30.)

plaintiff asserts that this case should be remanded to the ALJ so that the plaintiff can offer evidence to support his claim that he is disabled as a result of depression – evidence that was withheld from the administrative law judge initially because the plaintiff failed to disclose this evidence to his legal representative in the administrative proceedings.

## II.   DISCUSSION

### A.   Standards of Review–The Roles of the Administrative Law Judge and This Court

#### 1.   Initial Burdens of Proof , Persuasion and Articulation for the ALJ

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520.

4

This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## 2.   Guidelines for Assessment of the Disabling Effect of Pain

Moreover, where a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. § 404.1529.  Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain.  Instead. at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other

symptoms alleged and which, when considered with all the evidence. . . , would lead

to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a

framework under which a claimant's subjective complaints are to be considered.  20

C.F.R. § 404.1529.  Under these regulations, first, symptoms, such as pain, shortness

of breath, and fatigue, will only be considered to affect a claimant's ability to perform

work activities if such symptoms result from an underlying physical or mental

impairment that has been demonstrated to exist by medical signs or laboratory

findings. 20 C.F.R. § 404.1529(b).  Once a medically determinable impairment which

results in such symptoms is found to exist, the Commissioner must evaluate the

intensity and persistence of such symptoms to determine their impact on the claimant's

ability to work.  20 C.F.R. § 404.1529(b).  In so doing, the medical evidence of record

is considered along with the claimant's statements.  20 C.F.R. § 404.1529(b).  Social

Security Ruling 96-7p gives the following instructions in evaluating the credibility of

the claimant's statements regarding his symptoms:   "In general, the extent to which

an individual's statements about symptoms can be relied upon as probative evidence

in determining whether the individual is disabled depends on the credibility of the

statements.  In basic terms, the credibility of an individual's statements about pain or

other symptoms and their functional effects is the degree to which the statements can

be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

### 3.      Legal Benchmarks for Assessing Treating Physician Opinions

Further, it is beyond dispute that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  This principle applies with particular force to the testimony of a treating physician, testimony that is to be accorded great weight by the ALJ.  In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones.  In Morales v. Apfel, 225 F.3d 310  (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  See Adorno, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Id. at 317-318.

Furthermore, when assessing competing views of treating and non-treating physicians, the ALJ and this court are cautioned that:

[A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. Ferguson, 765 F.2d at 37 (1985). When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983). Treating physicians' reports should be accorded great

weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.)  An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.  Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985).

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999).

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R.  § 416.927(d)(2). When the opinion of a physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered.  The Regulations state:

Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(d)(2)(I).

Additionally, the nature and extent of the doctor-patient relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(d)(2)(ii).

Given this recognition of the great weight that should attach to the professional judgment of treating physicians, it is axiomatic that an ALJ must provide an adequate explanation for any decision which chooses to disregard a treating physician's findings regarding illness, impairment and disability. Moreover, when an ALJ fails to adequately explain why a treating physician's medical assessment has been discounted, a remand for further development of the factual record is proper. See, e.g., Burnett v. Commissioner of Social Security, 220 F.3d 112, 119 (3d Cir. 2000)(failure to adequately discuss competing medical evidence compels remand of ALJ decision);

Shaudeck v. Commissioner of Social Security, 181 F.3d 429 (3d Cir. 1999); Allen v. Brown, 881 F.2d 37, 40-41 (3d Cir. 1989); Belotserkovskaya v. Barnhart, 342 F.Supp.2d 335 (E.D. Pa. 2004).  Thus, as one court has aptly observed:

> "An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected."  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.1993) (internal quotation marks, citations and indication of alteration omitted).  Where the findings are those of a treating physician, the Third Circuit has "long accepted" the proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Id. (citations omitted)  An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, see Mason, 994 F.2d at 1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the reporting doctor is a specialist, see Id. at 1067.  An ALJ may not, however, reject medical determinations by substituting his own medical judgments.  See Frankenfield, 861 F.2d at 408.

Terwilliger v. Chater, 945 F.Supp. 836, 842-3 (E.D.Pa.1996).

## 4.     Other Procedural and Substantive Requisites for an ALJ Ruling–Proper Hypothetical Questions for Vocational Experts

Furthermore, since one of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy, an ALJ must exercise care when formulating proper hypothetical questions to vocational experts who opine on the availability of work for a particular claimant.  In this regard, the

controlling legal standards are clear, and clearly defined.  As the United States Court

of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have
> said that "[w]hile the ALJ may proffer a variety of assumptions to the
> expert, the vocational expert's testimony concerning a claimant's ability
> to perform alternative employment may only be considered for purposes
> of determining disability if the question accurately portrays the claimant's
> individual physical and mental impairments." Podedworny, 745 F.2d at
> 218.  A hypothetical question posed to a vocational expert "must reflect
> *all* of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269,
> 1276 (3d Cir.1987) (emphasis added).  Where there exists in the record
> medically undisputed evidence of specific impairments not included in
> a hypothetical question to a vocational expert, the expert's response is not
> considered substantial evidence. Podedworny, 745 F.2d at 218 (citing
> Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1155
> (3d Cir.1983)).

Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

The formulation of a proper hypothetical question has a dual significance in

social security proceedings.  First, as an evidentiary matter, it determines whether the

vocational expert's opinion can be considered as substantial evidence supporting an

ALJ finding. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists

in the record medically undisputed evidence of specific impairments not included in

a hypothetical question to a vocational expert, the expert's response is not considered

substantial evidence.")  However, more fundamentally, an erroneous or inadequate

hypothetical question undermines the reliability of any residual function capacity

determination since " objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford v. Barnhart, 399 F.3d 546, 554 n. 8 (3d Cir. 2005).

### 5.    Judicial Review of ALJ Determinations–Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding.  In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review.  In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d

Cir. 1999)." Johnson, 529 F.3d at 200. See also  Pierce v. Underwood, 487 U.S. 552

(1988).  It is less than a preponderance of the evidence but more than a mere scintilla

of proof.  Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence

means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting

Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores

countervailing evidence or fails to resolve a conflict created by the evidence. Mason

v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed

factual record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the

evidence does not prevent [the decision] from being supported by substantial

evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

Moreover, in conducting this review we are cautioned that "an ALJ's findings based

on the credibility of the applicant are to be accorded great weight and deference,

particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th

Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801

(10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally

positioned to observe and assess witness credibility.').") Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000).  Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### 6.    Judicial Review-New Evidence

Finally, in a case such as this, where the record reveals that there was new and additional evidence developed by a claimant following the ALJ hearing, several other legal considerations come into play. 42 U.S.C. § 405(g) provides that:  "The court may, . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."   Thus, we are empowered by statute to direct a remand to consider new and material evidence.   In making this determination, however, "the materiality standard of § 405(g) requires 'that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination.' Id.  See also Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1381 (9th Cir.1984); Dorsey v. Heckler, 702 F.2d 597, 604–05 (5th Cir.1983); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981).  Thus, to secure

16

remand, a claimant must show that new evidence raises a 'reasonable possibility' of reversal sufficient to undermine confidence in the prior decision. The burden of such a showing is not great. A 'reasonable possibility,' while requiring more than a minimal showing, need not meet a preponderance test. Instead, it is adequate if the new evidence is material and there is a reasonable possibility that it is sufficient to warrant a different outcome." Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985).

In practice, "[f]our factors must be considered pursuant to this requirement. See, e.g., Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir.1985). First, the evidence must be new and not merely cumulative of what is already in the record. Id. at 287. Second, the evidence must be material, relevant and probative. Id. Third, there must exist a reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion. Id. Fourth, the claimant must show good cause as to why the evidence was not incorporated into the earlier administrative record. Id." Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 472 (3d Cir. 2005).

## III.   DISCUSSION

In this case, the administrative law judge proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act during the relevant time of this case, which was May 7, 2010,

through the date of the ALJ's decision, September 15, 2011.[2]  The plaintiff appealed

this decision to the Appeals Council, which accepted newly submitted evidence, but

ultimately concluded that the evidence did not require reconsideration by the ALJ, and

found that the ALJ's decision to deny benefits was proper.  Thereafter, the plaintiff

initiated this action.

### A.    Factual and Procedural Background

The plaintiff, Michael J. Willis, was born on January 18, 1966, and has a high

school education alone with some college courses taken at Luzerne County

Community College.  Mr. Willis is divorced and has no children.  He lives in Plains,

Pennsylvania with his mother and father.  Until May 24, 2007, Mr. Willis worked as

a corrections officer at the State Correctional Institution at Dallas.  On that day, Mr.

Willis lost consciousness after falling at work.  As a result of this fall, the plaintiff

---

[2]  The ALJ also indicated that he gave great deference to the claimant during his review of the evidence, and that he included as part of his review evidence that had been submitted previously as part of the plaintiff's first unsuccessful application for DIB, which had alleged disability from May 24, 2007, through April 15, 2010.  The plaintiff contends that the ALJ's decision to consider this evidence effectively waived the potential application of res judicata to the plaintiff's claims, and thus May 24, 2007, should be deemed the "protective alleged onset date" in this case.  (Doc. 19, at 3.)  Regardless of whether the ALJ's consideration waived the issue of res judicata, however, we find that the ALJ's conclusion regarding the plaintiff's disability claim was supported by substantial evidence based upon consideration of all of the evidence that was made part of the record in this case.

sustained herniated cervical discs, of varying stages, at C2-3, C3-4, C4-5, C5-6, T5-6, T6-7, L3-4, L4-5, and L5-S1, as well as cervical and lumbar radiculopathy and a concussion. (Tr. 137-140.) The plaintiff has been out of work since suffering this workplace injury, and he subsequently settled a worker's compensation claim and accepted a disability retirement from his work with the Department of Corrections, which provides the plaintiff with medical insurance coverage. (Tr. 82.)

During the testimony taken before the ALJ, the plaintiff testified that his pain is severe, constant, and totally disabling. The plaintiff told the ALJ that although he can drive short distances and engage in some modicum of self-care, his days are otherwise marked by idleness, with the plaintiff taking a considerable daily quantity of medication to treat his pain and physical ailments, and resting in a reclining chair while watching television. The plaintiff testified that he engaged in little self-care, and little housework. The plaintiff also testified, generally, that he has depression, and that he has difficulty sleeping. (Tr. 64-77.) Although the plaintiff's own testimony indicated that his pain was excruciating and pervasive, other medical evidence in the record indicated that the plaintiff's pain was managed with medication, and that the plaintiff's medical condition was not as severe as he subjectively claimed. Much of this evidence, on which the ALJ relied, was taken directly from regular notes composed by a physician's assistant who saw the plaintiff at regular doctor's visits,

as well the results of MRIs, and the regular assessments of the plaintiff's various treating physicians.

Thus, on June 10, 2008, the plaintiff saw Elaine Lacey, PA-C, as part of his doctor's visit to treat his low- and mid-back pain with radicular symptoms in the lower extremities. During this examination, Ms. Lacey observed the plaintiff transition from sitting to standing independently. She noted that his gait was somewhat antalgic, that he had some decreased range of motion of the lumbar spine, some positive paralumbar spasm, no frank trigger points, no joint tenderness, and a positive straight-leg raise bilaterally. Following this exam, Ms. Lacey recommended that the plaintiff continue with his current medications. (Tr. 261.) These observations were consistent with subsequent evaluations during the plaintiff's doctor's appointments. During these appointments, Ms. Lacey noted that the plaintiff continued to have low- and mid-back pain, but was not in acute distress, moved from sitting to standing independently, ambulated independently without an assistive device, had a restrictive range of motion of the lumber spine with mild paralumbar spasm, and had no frank trigger points. (Tr. 264-66, 269, 339-40.) During one note, Ms. Lacey indicated that she was not sure why the plaintiff was as uncomfortable as he claimed. (Tr. 267.)

On February 12, 2010, the plaintiff saw Dr. David J. Sedor to treat his continued back pain. During this initial examination, Dr. Sedor observed that the plaintiff had

20

normal motor power, bulk and tone, spotty sensory loss in the upper and lower extremities, normal station and Romberg, antalgic gait, and demonstrated difficult getting on and off of the chair. (Tr. 301.) Dr. Sedor noted that the plaintiff's cervical spine range of motion was only thirty-five percent of normal, the plaintiff had a positive Spurling, positive relief with upward distraction, lumbar flexion of forty degrees, extension zero, side-to-side zero, seated straight leg thirty-five degrees bilaterally, and tenderness of the cervical, thoracic, and lumbar spines. Dr. Sedor diagnosed the plaintiff with cervical radiculopathy, cervical disc herniation, lumbar radiculopathy, mechanical back pain, lumbar disc herniation, mid-back pain, parascapular pain, and headaches. (Tr. 301.)

On February 22, 2010, the plaintiff went to the emergency room with complaints of right arm pain. During the ensuing examination, he was found to have normal neck range of motion, no back tenderness, normal inspection and range of motion at the upper and lower extremities. (Tr. 205.) The plaintiff was found to have no focal sensory neurological deficits (Tr. 206), his upper extremity sensations were intact, he had no numbness or tingling, and he had a full range of motion. (Id.) The plaintiff's right extremity strength was found to be slightly weak. (Id.)

The following month, on March 12, 2010, the plaintiff had a cervical spine x-ray taken after he reported complaints of neck and low back pain. This x-ray revealed

borderline disc space at C5-C6 level, limitation in the plaintiff's range of motion, and no neural foraminal encroachment or other abnormalities demonstrated. (Tr. 229.) An x-ray of the lumbar spine taken on the same day revealed a slight narrowing of the L4-L5 disc space with no significant change in the appearance of the lumbar spine in the flexion and extension views, mild dextroscoliosis, and degenerative changes of the lower intervertebral joints. (Tr. 231.)

On March 15, 2010, the plaintiff had an MRI taken of his thoracic spine as a result of his complaints of mid-back pain. This MRI revealed narrowing of the T6-T7 disc space with desiccation of the discs of the upper thoracic spine and a minimal protrusion at T6-T7 in contact with the dural sac but not the cord, with no central canal stenosis or neural foraminal encroachment at any level. (Tr. 227.) The following day, the plaintiff had a lumbar spine MRI taken for his complaints of low-back pain with bilateral leg pain. This MRI showed the plaintiff had degenerative changes of the intervertebral joints at all levels, slight narrowing of the disc spaces at L3-L4 and L4-L5 with bilateral protrusions and encroachment of the neural foramina, and minimal central canal stenosis at L4-L5 that was progressing since his June 5, 2007 examination. (Tr. 225-226.)

On June 10, 2010, the plaintiff saw William C. Welch, M.D., a neurosurgical specialist at the University of Pennsylvania, upon a referral from Dr. Sedor. It appears

that this referral was to determine whether the plaintiff was a good candidate for surgery to address his back pain.  Accordingly, Dr. Welch saw the plaintiff for midline cervical pain radiating down both of his arms, with numbness in both arms and down both legs.  Dr. Welch noted that the plaintiff was able to write and use utensils and had 4/5 motor strength with limited effort, was intact to light touch and pain, that his gait was slow, he had poor heel/toe walking, and refused to attempt to stand on either leg independently.  (Tr. 280).  Dr. Welch found that the plaintiff's diagnostic studies revealed very mild cervical spine multi-level degenerative disc disease, mild thoracic spine disc herniation with no impingement on cord, and moderate lumbar spine foraminal narrowing.  Dr. Welch did not recommend surgery, but instead urged the plaintiff to undertake active physical therapy and rehabilitation to address the plaintiff's physical condition.[3]  (Tr. 280-82.)

On July 27, 2010, the plaintiff returned to Dr. Sedor.  During this visit, the plaintiff complained of mild depression, but did not want to attend counseling.  The plaintiff complained of pain in his neck, arms, back, and legs.  Dr. Sedor observed that the plaintiff's gait was antalgic, and that he had tenderness and spasm in the cervical,

---

[3] During the hearing before the ALJ, the plaintiff testified that he is 5'10" and weighs between 330 and 340 pounds.  (Tr. 65.)  Medical providers noted the plaintiff's weight gain at numerous points in the record, and Dr. Welch's recommendation appears to have related to the plaintiff's obesity and deconditioning.  (Tr. 280-82.)

thoracic, and lumbar spines.  (Tr. 298.)  Dr. Sedor also noted that the plaintiff's neck range of motion flexion was forty percent, extension thirty percent, and side-to-side rotation forty percent.  Dr. Sedor did not suggest surgery, and instead provided the plaintiff with a brace, a heating/cooling device, and an ultrasound.  (Id.)

On August 14, 2010, the plaintiff was seen by Dr. Albert D. Janerich, M.D.  Dr. Janerich noted that the plaintiff remained symptomatic to twenty percent of normal of low back pain, with more pain on the right than the left, with radiating pain down his legs.  Dr. Janerich found the plaintiff to have guarded movements, spasm, no identified trigger points, and a restricted range of motion.  He noted that the plaintiff's pain and guarding prevented an accurate assessment of the plaintiff's complete clinical neurolgic exam.  (Tr. 262.)

On October 28, 2010, the plaintiff saw Dr. Sedor for a follow-up appointment.  Notes from this appointment reflect the plaintiff's history of radiating neck pain, mid-back pain, radiating low-back pain, headaches, and dizziness.  (Tr. 352.)  During the physical examination, Dr. Sedor reported that the plaintiff continued to have an antalgic gait, neck range of motion at thirty-five percent of normal, side-to-side rotation forty percent, lumbar flexion forty degrees, extension zero, side-to-side rotation zero, stiff and limited, straight leg raise thirty to forty bilaterally, and tenderness and spasm of the cervical, thoracic, and lumbar spines.  Dr. Sedor

24

diagnosed the plaintiff with cervical radiculopathy, mid-back pain, lumbar radiculopathy, parascapular pain, and mechanical back pain. (Tr. 353.)

The plaintiff saw Dr. Sedor again on April 6, 2011. During this examination, Dr. Sedor found the plaintiff to be alert, oriented to person, place, and time, and with intact higher critical function. (Tr. 349.) The plaintiff exhibited normal motor power, bulk and tone, spotty sensory loss in the upper and lower extremities, normal station and Romberg, antalgic gait, and a demonstrated difficulty getting on and off the chair. (Tr. 350.) His cervical spine range of motion was thirty-five percent of normal, had a positive Spurling, positive relief with upward distraction, lumbar flexion forty degrees, extension zero, side-to-side zero, seated straight leg raise thirty-five degrees bilaterally, and tenderness of the cervical, thoracic, and lumbar spines. Dr. Sedor diagnosed the plaintiff with cervical radiluopathy, cervical disc herniation, lumbar radiculopathy, parascapular pain, and headaches. (Id.)

On May 4, 2011, the plaintiff returned to Dr. Janerich for a follow-up visit. In the notes from this visit, Dr. Janerich remarked that the plaintiff had become more depressed, his movements were slow and guarded with spasm and no trigger points, and that he had a restricted range of motion. Dr. Janerich recommended that the plaintiff undertake a weight-loss program, and continue to avoid activities that could

increase the risk of stress on his lower back.  Dr. Janerich did not recommend changing the plaintiff's medications.  (Tr. 338.)

On July 8, 2011, the plaintiff presented at Dr. Sedor's practice with continued complaints of neck, arm, leg, and mid-back pain, and headaches.  During examination, the plaintiff was found to have a cervical range of motion of fifty percent of normal, with positive Spurling, positive relief with upward traction, lumbar flexion fifteen percent, extension zero, side-to-side zero, seated straight leg raise twenty-five percent right bilaterally, positive straight leg raise, antalgic gait, 5/5 motor testing, difficulty sitting, standing, and walking, and with the need to be supine at will.  Dr. Sedor diagnosed the plaintiff with cervical radiculopathy, cervical disc herniation, lumbar radiculopathy, mechanical back pain, lumbar disc herniation, mid-back pain, parascapular pain, and headaches.  Dr. Sedor recommended that the plaintiff continue with his pain regimen.  (Tr. 347.)

On July 22, 2011, Dr. Janerich wrote a letter to the plaintiff's lawyer to indicate that the plaintiff's physical conditions included chronic lower back pain resulting from thoracic disc herniations, discogenic disease of lumbar spine, bilateral lumbosacral radiulopathies, and that he underwent pain management therapy.  (Tr. 330.) Responding to a check-list that the lawyer provided, Dr. Janerich noted that the plaintiff had a significantly reduced range of motion, an abnormal gait, and muscle

spasm. (Tr. 332-333.) He also noted that emotional factors contributed to the severity of the symptoms and functional limitations, that his physical and emotional impairments were reasonably consistent with his symptoms and functional limitations, that he frequently suffered pain severe enough to interfere with attention and concentration, that side effects of his medication included sedation and drowsiness, and that his prognosis was guarded. (Tr. 333.) Dr. Janerich indicated that the plaintiff could sit and stand/walk less than two hours in an eight-hour workday with normal breaks, that he could walk approximately twenty to thirty minutes and must walk for five minutes each time, that he needed a job that permitted shifting positions at will from sitting, standing, or walking, and needed to take two or three unscheduled breaks every twenty to thirty minutes during an eight-hour day. (Tr. 333-334.) Dr. Janerich stated that the plaintiff should be limited to lifting and carrying less than ten pounds occasionally, and could never lift and carry heavier items. Dr. Janerich predicted that the plaintiff would likely be absent from work more than four times a month. (Tr. 335.) Dr. Janerich also indicated that the plaintiff had pain present to an extent where it would distracting and interfere with his performance of daily activities that involved walking, standing, and bending, and that medication would negatively impact the plaintiff's ability to work. (Tr. 336.)

In addition to this evidence submitted to the ALJ, after the ALJ's September 15, 2011 decision to deny DIB, the plaintiff's new attorney submitted additional evidence to the Appeals Council, the majority of which appears to relate to the plaintiff's mental health, which included struggles with depression and anxiety. The additional medical evidence is comprised of Exhibits B15F through B19F (Tr. 365-613.) A substantial portion of this late-filed evidence included reports from Matthew A. Berger, M.D., which related to a period of time between July 31, 2003, to December 21, 2006, which predates the plaintiff's alleged onset date of disability and thus appears to be of little relevance in this case. (Tr. 365-442.)

Another portion of the evidence filed with the Appeals Council includes progress notes from Nurse Carol Devine of Dr. Berger's office during the period September 20, 2007, through January 11, 2011. In these notes, Nurse Devine reported that the plaintiff was in mild to moderate distress and pain, with calm motor activity, and thought processes that demonstrated coherence and logic. The plaintiff's associative thinking was found to be intact. Nurse Devine noted that the plaintiff's anxiety was intermittent, that his affect was appropriate, that he exhibited an appropriately subdued mood during the visit, and that he reported depression and ongoing anxiety were related to situational stressors. Nurse Devine reported that the plaintiff's mood swings were stable, that he was alert and oriented , had intact recent,

remote and immediate memory, that his attention span and powers of concentration were normal, that his judgment was realistic and intact, and his insight was appropriate and intact. (Tr. 366-407.)

On October 10, 2012, the Appeals Council considered the additional evidence that the plaintiff submitted and found no reason to review the ALJ's decision on the basis of this new evidence. (Tr. 1.) The Appeals Council explained its decision by noting that the evidence offered did not affect the ALJ's decision about whether the plaintiff was disabled on or before September 15, 2011, the date of the ALJ's decision, and that the evidence did not provide a basis for changing that decision. Thereafter, the Appeals Council denied the plaintiff's request for review. (Tr. 1-2, 5.) With respect to other new evidence submitted after the ALJ's decision, much of this information consists of treatment notes from Dr. Samuel V. Rizzo, a psychiatrist, taken between 1998 and 2001, and unrelated to the plaintiff's physical impairments that occurred years later. (Tr. 441-613.) Additionally, the plaintiff submitted records from the VA medical center between 1991 and 1999, which again predated by a considerable period the alleged onset of disability. (Tr. 503-612.)

During the administrative hearing the plaintiff testified that he has been totally disabled since May 7, 2010. (Tr. 65.) In addition, a vocational expert testified. During her testimony the vocational expert was asked to assume an individual with the

same age, education and work experience as the plaintiff, and that such individual was limited to performing sedentary work that permitted him to change position every thirty minutes, strict postural restrictions with no crawling, climbing ladders or scaffolding, no kneeling, and environmental restrictions that limited exposure to temperature extremes, high humidity, vibration, unprotected heights, or dangerous machinery. Additionally, the vocational expert was told to limit her consideration to jobs that involved simple, repetitive tasks. (Tr. 78-79.) Guided by these restrictions, the vocational expert testified that an individual facing such workplace limitations could nevertheless perform unskilled, sedentary jobs such as protective service worker, reception information clerk, and an interview clerk. (Tr. 79.)

## B.   The ALJ's Evaluation of the Medical Opinions of Drs. Janerich and Sedor was Supported by Substantial Evidence

The plaintiff's primary objection to the ALJ's decision is that he failed to give appropriate weight to the medical reports, and ultimate opinions, of Drs. Janerich and Sedor – the doctors who appear to have had the most clinical contact with the plaintiff following his alleged onset date of disability. The plaintiff argues that the ALJ parsed the record and relied too heavily on treatment notes from a physician's assistant or from Dr. Welch, the neurosurgeon who saw the plaintiff on only two occasions and, therefore, had less opportunity to treat and observe the plaintiff. Upon consideration,

we disagree that the ALJ's decision to discount the ultimate opinions of these treating physicians was based on something less than substantial evidence; indeed, much of the evidence that the ALJ appears to have relief on included the treatment notes from Drs. Janerich and Sedor.

The Social Security regulations provide that the "more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(d)(4). The regulations also provide that the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 404.1527(d)(3). For that reason, when the record presents inconsistencies with the treating physician's ultimate opinion, or where the medical source does not provide substantial evidence to support the opinion, and where treatment notes actually undermine the opinion, then an ALJ may appropriately discount the opinion. See Burke v. Comm'r of Social Security, 317 F. App'x 240, 243 (3d Cir. 2009) (finding that the administrative law judge did not err in according a treating physician's opinion no significant weight where the physician did not provide objective medical evidence to support the limitations he assigned to the claimant, and finding the physician's opinion to be inconsistent with other medical evidence, including his own progress notes).

In this case, the plaintiff insists that the opinions of Drs. Sedor and Janerich deserved to receive greater, or even controlling weight. The plaintiff's principal argument seems to be that these doctors each saw the plaintiff several times, and that each doctor relied on objective medical evidence as well as their own experience in finding the plaintiff disabled. (Doc. 19, at 10.) However, a review of the ALJ's decision shows that he provided a reasoned explanation of why he gave Dr. Janerich's ultimate opinion of disability little weight.

First, the ALJ observed that Dr. Janerich's conclusion about the effects of the plaintiff's medications was not supported by other objective medical evidence and by the doctor's own treatment notes. As the Commissioner observes, the ALJ noted that Dr. Janerich's own objective findings did not indicate that the plaintiff was entirely disabled, and indeed appeared in many respects to show only mild to moderately severe medical limitations. In this regard, Dr. Janerich's treatment notes found restrictions in the plaintiff's range of motion and spasm, and reflected that he could not identify any trigger points. (Tr. 39, 262, 338.) In addition, the ALJ commented that Dr. Janerich did not recommend additional treatment or diagnostic studies, and made no findings or other statements regarding the effect of the plaintiff's medications – something that in his opinion he claimed rendered the plaintiff incapable of working. (Tr. 39.)

The ALJ also found that the check-list that Dr. Janerich provided to the plaintiff's lawyer was not supported by the other treatment notes in the file from Dr. Janerich, and thus concluded that Dr. Janerich's ultimate opinion was not supported by objective evidence.  (Tr. 40.)  The ALJ was doubtless correct in affording little weight to this check list form since "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."  Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993),

Furthermore, the ALJ observed that in his most recent evaluation, Dr. Janerich only recommended that the plaintiff engage in weight loss programming and avoid activities that would aggravate his lower-back pain, but he did not recommend any additional treatment, or prescribe any other limitations on the plaintiff's activities due to physical condition or the effect of the plaintiff's medications.

Likewise, the ALJ discounted Dr. Sedor's ultimate findings of disability because the conclusion was not supported by the other objective evidence and was, in some ways, inconsistent with that evidence.  (Tr. 39.)  In this regard, the ALJ noted that Dr. Sedor's opinion was not consistent with other objective evidence in the record, including neurological findings from Dr. Welch, who found that the plaintiff's condition should be addressed, in part, through physical therapy and attention to the plaintiff's lack of physical conditioning.  Although the plaintiff suggests that the Court

should discount Dr. Welch's findings, these treatment notes were prepared by an examining and treating physician who rendered an objective medical opinion after examining the plaintiff on two occasions.  It was the province of the ALJ to consider this evidence, and nothing about his consideration of the evidence was erroneous or unsupported.

There was, additionally, other medical evidence in the record that presented certain inconsistencies with Drs. Janerich and Sedor.  This evidence includes the treatment notes prepared by Dr. Janerich's own physician's assistant, Ms. Lacey, who examined the plaintiff on multiple occasions and noted his ability to sit and stand independently, to move around without the use of assistive devices, and a lack of trigger points.  (Tr. 261, 264-66, 269-70, 339-40.)  When the plaintiff presented at an emergency room with complaints of right arm pain, the physical examination revealed a normal range of motion in the neck and lower extremities, no focal sensory neurological deficits, and intact upper extremity sensation.  (Tr. 206.)  The ALJ also cited to objective evidence in the record, including MRIs, multiple x-rays, and CT scans taken in the spring of 2010 that showed minimal degenerative changes.  (Tr. 36.) The plaintiff argues that this information should be discounted, or otherwise that the Commissioner has taken it out of context, but we do not find any legal support for the plaintiff's suggestion that the ALJ impermissibly considered this evidence in rendering

his decision. Indeed, the ALJ appropriately considered all medical evidence in order to determine whether the ultimate conclusions reached by Drs. Sedor and Janerich (at least one of which appears to have been provided pursuant to a request from the plaintiff's lawyer) were supported by other objective medical evidence.

The plaintiff also faults the ALJ for not discussing in detail certain other medical evidence that had been presented as part of the plaintiff's first unsuccessful application for DIB. We have considered this argument, but fail to perceive how this information adds anything to the plaintiff's claim that the ALJ's ultimate findings were unsupported or erroneous. Much of this information would appear to be undisputed, and in some ways even cumulative, and merely serves to amplify the undisputed fact that the plaintiff suffers from radiculopathy and other medical impairments of his cervical, thoracic, and lumbar spine that combine to limit his ability in significant ways. The ALJ did not find that the plaintiff was malingering, and he acknowledged that the plaintiff had several severe impairments, including degenerative disc disease, obesity and depression. (Tr. 33.) However, as the ALJ explained in adequate detail and with reference to the record evidence, he did not find the plaintiff's severe impairments to be completely disabling. We find that this decision was supported by substantial evidence, and we perceive no error in the ALJ's reasons for discounting the ultimate conclusions reached by the plaintiff's treating

physicians where those opinions were not supported by other evidence in the record, including numerous treatment notes prepared by those doctors and other medical providers.

### C.      The Appeals Council Appropriately Denied the Plaintiff's Request for Review

The plaintiff had also sought a declaration of disability on the basis of depression, yet the record evidence provided little support for this claim.  Although the ALJ found that the plaintiff did suffer from the depression, he found that the record contained insufficient evidence to support the plaintiff's claim that he was totally disabled as a result.   After the ALJ issued an unfavorable ruling, the plaintiff submitted additional evidence to the Appeals Council after the plaintiff's newly appointed lawyer discovered that the plaintiff had, in fact, been treating for depression and related mental-health issues for several years.[4]   However, contrary to what is

---

[4] The plaintiff's current lawyer is specially commended for his diligence in securing this evidence and in presenting it to the Appeals Council.  We also have considered counsel's subjective view that the plaintiff suffers from substantial mental health challenges, and that his feelings of shame about having sought mental-health services caused or contributed to his inability or unwillingness to provide the ALJ with records relating to these services.  Indeed, it now appears that the plaintiff was at best misleading and at worst untruthful during his testimony before the ALJ, as he told the ALJ that he had only gone to counseling "a few times," that he was not taking any medication other than Xanax prescribed by a family doctor, and that this medication is the entirety of the "treatment" he received for depression.  (Tr. 69.)  Shortly after giving this testimony, however, the plaintiff told the ALJ that he had gone to counseling with Dr. Berger "for

suggested, the Appeals Council did not dismiss the additional records or indicate that the evidence was irrelevant.  Instead, the Appeals Council reviewed the additional evidence submitted and, after finding that it did not provide a basis for changing the ALJ's decision, denied the plaintiff's request for review. (Tr. 1-2.)  The plaintiff now argues that this action should be remanded to the ALJ for consideration of the evidence that he submitted to the Appeals Council.  We disagree.

As discussed above, the law regarding the consideration of additional evidence in the Social Security context is straightforward.   When a claimant or his representative submits additional evidence to the Appeals Council with request for review, the Appeals Council must determine whether the evidence is new, material, and related to the period on or before the date of the ALJ's decision.  If the evidence satisfies these criteria, then the Appeals Council must evaluate the entire record, including the additional evidence.  20 C.F.R. § 404.970(b).  The Third Circuit has emphasized that the claimant seeking remand on the basis of new evidence must demonstrate that the additional evidence is both new and material, and that the

---

years, on and off." (Tr. 70.)  The records that the plaintiff's lawyer submitted to the Appeals Council after the ALJ issued his decision show that the plaintiff had treated with Dr. Berger's office for a long period of time, as well as with other providers, that he had at times been prescribed numerous medications, and that years before seeing Dr. Berger the plaintiff had received treatment through the VA Medical Center.

claimant had good cause for not submitting the evidence to the ALJ for his initial

review.  Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3d Cir.

1984).  Where such criteria are met, the district court may enter what is colloquially

referred to as a "sentence six" remand pursuant to the sixth sentence of 42 U.S.C. §

405(g).[5]

A sentence six remand is authorized where "new evidence has come to light that

was not available to the claimant at the time of the administrative proceeding and that

evidence might have changed the outcome of the prior proceeding."  Melkonyan v.

Sullivan, 501 U.S. 89, 98 (1991).  As noted, the sixth sentence of § 405(g) requires a

---

[5]  Sentence six of § 405(g) provides as follows:

> The court may, on the motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact of his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

showing of "good cause" for the failure to present the additional evidence in the prior proceeding.  Id.

In order for a claimant to prevail on a request for a sentence six remand, the evidence to be considered must truly be "new evidence" and "not merely cumulative of what is already in the record." Szubak, 745 F.2d at 833.  Second, the evidence must be "material", meaning that it must be "relevant and probative." Id.  Moreover, "the materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the Secretary's determination" Id.  Implicit in the materiality requirement "is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id.  "Finally the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record." Id.

Guided by these considerations, we conclude that the belated submission of the plaintiff's additional medical and mental-health records does not warrant remand to the ALJ.

As a threshold matter, the Appeals Council did consider the evidence that the plaintiff's counsel submitted and found that it provided no basis to review the ALJ's decision.  (Tr. 1.)  The plaintiff mischaracterizes the Appeals Council's action as a

decision, (Doc. 19, at 10.), but as the Commissioner notes, the denial of Appeals Council review is not a decision subject to this court's review.   20 C.F.R. §§ 404.1520(d)(2), .1520(e), .1546(c).

Additionally, we have some difficulty accepting plaintiff's counsel's assertion that the evidence is "new" and that there was "good cause" for submitting the evidence after the ALJ had rendered his decision.   The plaintiff's attorney suggests that the plaintiff's feelings of shame or insecurity about having pursued mental-health treatment should cause the court to find that the records were somehow effectively unavailable and that the plaintiff's subjective reluctance to discuss his prior mental-health regimen supplies the requisite "good cause" for the failure to submit this evidence originally.   Yet, it appears beyond dispute that he plaintiff was aware of the existence of this longstanding medical evidence prior to submitting it to the Appeals Council, but did not disclose this evidence until after he had received an adverse decision from the ALJ.   (Tr. 613.)   Without a more substantial showing to justify counsel's assertion that the plaintiff had "good cause" for failing to procure this evidence and ensure it was submitted timely, we are unable to find that there was "good cause" to excuse the late filing of these records.

Even if there were good cause for the late filing, however, the majority of the records that the plaintiff would have the ALJ consider significantly pre-date the

alleged onset of the plaintiff's disability of May 7, 2010.  The medical records from

Dr. Berger span 2003 through 2006, and thus fall far before the alleged onset date of

disability.  Likewise, the plaintiff's records from the VA Medical Center appear to

cover the period 1991 to 1999, and medical records from Dr. Rizzo stretch from 1998

to 2001 – all during the time the plaintiff was working as a corrections officer.

Furthermore, having reviewed the evidence, we do not find that the medical evidence

satisfies the requirement that it be "material" to the plaintiff's claims, as much of it

appears to provide little support to the plaintiff's claims that he is totally disabled as

the result of mental-health matters that do not appear on the face of the records to have

been particularly extreme, and which occurred for the most part during a time when

the plaintiff was actually working.  Thus we do not find that there is a reasonable

probability that it would have changed the outcome in the proceedings before the ALJ,

and we find there is insufficient basis to remand the matter to the ALJ for further

consideration of the "new" evidence submitted.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the plaintiff's motion for summary judgment (Doc.

17.) is DENIED.  IT IS FURTHER ORDERED THAT judgment shall be entered in

favor of the Commissioner, and the case marked closed.

An order consistent with this memorandum will be entered separately.

***<u>S/MARTIN C. CARLSON</u>***
Martin C. Carlson
United States Magistrate Judge